## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD OF** | : | **CIVIL ACTION** |
| **ELECTRICAL WORKERS LOCAL UNION** | : | |
| **NO. 654 HEALTH AND WELFARE FUND** | : | |
| **c/o Frank M. Vaccaro Associates** | : | **NO.** |
| **127 Roland Avenue, Suite 200** | : | |
| **Mount Laurel, NJ 08054,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **INTERNATIONAL BROTHERHOOD OF** | : | |
| **ELECTRICAL WORKERS LOCAL UNION** | : | |
| **NO. 654 PENSION FUND** | : | |
| **c/o Frank M. Vaccaro Associates** | : | |
| **27 Roland Avenue, Suite 200** | : | |
| **Mount Laurel, NJ 08054,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PAUL MULLEN, TRUSTEE** | : | |
| **INTERNATIONAL BROTHERHOOD OF** | : | |
| **ELECTRICAL WORKERS LOCAL UNION** | : | |
| **NO. 654 BENEFIT FUNDS** | : | |
| **3729 Chichester Avenue** | : | |
| **Boothwyn, PA 19061-3135,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **VALIANT ENERGY SERVICES, LLC** | : | |
| **d/b/a VALIANT POWER GROUP** | : | |
| **1 Commerce Street** | : | |
| **Branchburg, NJ 08876,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>COMPLAINT</u>

### <u>The Parties</u>

1.      Plaintiffs, International Brotherhood of Electrical Workers Local Union No. 654

Health and Welfare Fund and International Brotherhood of Electrical Workers Local Union No. 654

Pension Fund ("Plaintiff Funds") are employee benefit plans within the meaning of Section 3 of the

Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1002(3) with their principal office located at 27 Roland Avenue, Suite 200, Mount Laurel, NJ 08054.

2.      Plaintiff, Paul Mullen, is a Trustee of each of the aforementioned employee benefit plans and a fiduciary within the meaning of Section 21(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1002(21)(A) with his principal office located at 3729 Chichester Avenue, Boothwyn, PA 19061-3135.

3.      Defendant, Valiant Energy Services, LLC d/b/a Valiant Power Group, ("Defendant") is a company with a principal business location at 1 Commerce Street, Branchburg, NJ 08876.

4.      Defendant is engaged in commerce within the meaning of Section 2(6) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Section 152(6) and has employed members of Plaintiff Union pursuant to a collective bargaining agreement in the Commonwealth of Pennsylvania.

5.      Defendant is an Employer within the meaning of Section 2(2) of the National Labor Relations Act and Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Section 152(2) and Section 185; and ERISA Sections 3(5) and 515, 29 U.S.C. Section 1002(5) and Section 1145.

Jurisdiction & Venue

6.      Jurisdiction of the District Court is invoked pursuant to 28 U.S.C. Section 1337, providing for original jurisdiction in civil actions that arise out of an Act of Congress regulating commerce.


7.      Jurisdiction of the District Court is invoked pursuant to the provisions of ERISA Section 502 and Section 515, 29 U.S.C. Sections 1132 and 1145, in that Defendant is an employer as defined by ERISA.  The Eastern District of Pennsylvania is the proper venue under ERISA Section 502(e)(2), 29 U.S.C. Section 1132(e)(2), because the Defendant's principal office is located in this judicial district.


Cause Of Action

8.      The Defendant is a party to a collective bargaining agreement(s) with the International Brotherhood of Electrical Workers Local Union No. 654, which requires that the Defendant make certain contributions to the Plaintiff Funds.  The relevant provisions of the collective bargaining agreement are attached as Exhibit A.


9.      Defendant, like all other contributing employers to Plaintiff Funds, is required to submit monthly reports setting forth the hours worked by employees covered under the collective bargaining agreement(s), and to remit fringe benefit contributions to Plaintiff Funds, at rates commensurate with those required under the collective bargaining agreement(s), for all hours worked.

10.     Notwithstanding the obligations contained in said collective bargaining agreement(s), Defendant has failed to remit liquidated damages and interest on delinquent contributions for the period of May 1, 2017 through September 31, 2017.

11.     Additionally, Defendant has failed to remit fringe benefit contributions for the period of October 1, 2017 to present, thus resulting in a total delinquency in the amount of at least $44,657.36, including interest and liquidated damages.

12.     These amounts may change as Defendant makes or fails to make payments related to either additional or prior work performed under the collective bargaining agreement(s).

13.     Defendant has been notified of the delinquencies, but has failed to make payments as required by the agreement(s).

**WHEREFORE**, Plaintiffs request this Court to grant judgment against the Defendant and in favor of the Plaintiffs as follows:

a.     Judgment in the amount of $44,657.36, or such other amount as may be due and owing when this cause of action reaches judgment;

b.     Reasonable counsel fees, interest and costs of suit, pursuant to the applicable collective bargaining agreement(s) and Section 502 of ERISA;

c.     Injunctive relief ordering Defendant to remit employer reports, contributions, and other required payments in an accurate and timely fashion;

4

d.     Liquidated damages as provided by the applicable collective bargaining agreement(s) and by Section 502 of ERISA;

e.     An accounting of all amounts due to the various plaintiffs, based upon examination of the Defendant's payroll records; and

f.     Other relief as the Court deems just and proper.

Respectfully submitted,
**SPEAR WILDERMAN, P.C.**

BY: _____

**NICHOLAS J. BOTTA, ESQUIRE**
Validation of Signature NJB8726
230 South Broad Street, Suite 1400
Philadelphia, PA 19102
(215) 732-0101
Attorney for Plaintiffs

Dated:  March 19, 2018

# EXHIBIT "A"

# AGREEMENT

Agreement by and between the Chester Division, Penn-Del-Jersey Chapter, N.E.C.A., and Local Union No. 654, I.B.E.W.

It shall apply to all firms who sign a Letter of Assent to be bound by this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Chester Division, Penn-Del-Jersey Chapter, N.E.C.A., and the term "Union" shall mean Local Union No. 654, I.B.E.W.

The term "employer" shall mean an individual firm who has been recognized by an Assent to this Agreement.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employee, the Union and the Public. Progress in industry demands a mutuality of confidence between the Employer and the Public. Progress in industry demands peace and by adjusting any differences by rational common-sense methods. Now, therefore, in consideration of the mutual promises and agreements contained herein, the parties agree hereto as follows:

## ARTICLE I
### Effective Date - Changes - Grievances - Disputes

Section 1.01 - This agreement shall take effect **June 2, 2014** and remain in effect until **May 28, 2017**, unless otherwise specified, provided for herein. It shall continue in effect from year to year thereafter, from June 1 through May 31 of each year, unless changed or terminated in the way later provided herein.                    11/2013

Section 1.02 (a) Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

1

(d) Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication.    Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date.   The Council's decisions shall be final and binding.

(e) When a case has been submitted to the Council, it shall be the responsibility of the negotiation committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

Section 1.03   This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto.   Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

Section 1.04   There shall be no stoppage of work either by strike or lockout because of any proposed changes in this agreement or disputes over matters relating to this Agreement.   All such matters must be handled as stated herein.

Section 1.05   There shall be a Labor-Management Committee of three representing the Union and three representing the Employers.   It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

Section 1.06   All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement.    In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07   All matters coming before the Labor-Management Committee shall be decided by majority vote.   Four members of the committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

2

Section 1.08   Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication.   The Council's decision shall be final and binding.

Section 1.09   When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.


ARTICLE II

Employer Rights - Union Rights

Section 2.01   Members of the Union, except those meeting the requirements of "Employer", as defined herein, shall not contract for any electrical work.

Section 2.02   An essential and basic requirement of employment by any Employer under this Agreement shall be that all workmen shall be ready and able to work with safety to themselves and others at all times, and that all work shall be performed as safely as care and skill in layout and performance shall permit.   Therefore, only those workmen shall be employed by the Employer, who possess sufficient skill and ability to meet this requirement.

Section 2.03   All Employees who are members of the Union on the effective date of this Agreement shall be required to remain members of the Union as a condition of employment during the term of this Agreement.   New Employees shall be required to become and remain members of the Union as a condition of employment from and after the thirty-first (31st) day following the dates of their employment, or the effective date of this Agreement, whichever is later.

   (a)   For his part, the Employer recognizes the Union as the exclusive representative of all his Employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours or employment and other conditions of employment.

Section 2.04   Certain qualifications, knowledge, experience and financial responsibility are required of anyone desiring to be an Employer in the Electrical Industry.   Therefore, an Employer who contracts for Electrical work is a person, firm or corporation having these qualifications and maintaining a permanent place of business and a suitable financial status to meet payroll requirements.

3

Section 2.05   For all Employees covered by this Agreement, the Employer shall carry Workmen's Compensation Insurance with a Company authorized to do business in this State, Social Security and such other protective insurance as may be required by the laws of this State, and shall furnish satisfactory proof of such to the Union; he shall also make contributions to the Pennsylvania Unemployment Compensation Commission.

Section 2.06   The Union reserves the right to discipline its members for violations of its laws, rules and agreement.

Section 2.07   This Agreement does not deny the right of the Union or its representatives to render assistance to other labor organizations by removal of its members from jobs when necessary and when the Union or its proper representatives decide to do so, but no removal shall take place until notice is given to the Employer involved.

Section 2.08   When such a removal takes place, the Union or its representatives shall direct the workmen on such job to carefully put away all tools, materials, equipment or any other property of the Employer in a safe manner.  The Union will be financially responsible for any loss to the Employer for neglect in carrying out this provision, but only when a safe place is provided for these by the employer.

Section 2.09   An employer signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, who signs an assent to the Agreement, may bring up to four bargaining unit employees employed in that Local Union's jurisdiction into this Local's jurisdiction and up to two bargaining unit employees per job from that Local's jurisdiction to this Local's jurisdiction for specialty or service and maintenance work.  All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on Employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

Section 2.10   The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

4

Section 2.11 The Local Union is a part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the I.B.E.W., other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of this agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the I.B.E.W., or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting, or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

All charges of violations of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provision of this Agreement covering the procedure for the handling of grievances and the final binding resolution of disputes.

Section 2.12   Employers will not be permitted to work at the Electrical trade.

Section 2.13   The Union understands the Employer is responsible to perform the work required by the owner.   The Employer shall, therefore, have no restrictions, except those specifically provided for in the collective bargaining agreement, in planning, directing and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as foremen, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

Employer shall have the right to call foremen by name provided:

    (a)   Employer shall have the right to call foremen by name.
    (b)   The employee has not quit his previous employer within the past two weeks.
    (c)   The employer shall notify the Business Manager in writing of the name of the individual who is to be requested.
    (d)   When an employee is called as a foreman he must remain as a foreman for two hundred hours (200) or must receive a reduction in force lay-off.  This employee shall not receive less than the pertinent foreman's rate of pay.

Section 2.14   All Employers, by contractual agreement, shall forward to the Local Business Manager within forty-eight (48) hours of any accident, a legible copy of the "Employer's First Report of Injury."

ARTICLE III

Inside Referral Procedure

Section 3.01   In the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

Section 3.02   The Union shall be the sole and exclusive source of referrals of applicants for employment.

Section 3.03   The Employer shall have the right to reject any applicant for employment.

Section 3.04   The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, by-laws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements.   All such selection and referral shall be in accord with the following procedure.

Section 3.05   The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below.   Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

Journeyman Wireman – Journeyman Technician

GROUP I.   All applicants for employment who have four or more years' experience in the trade; are residents of the geographical area constituting the normal construction labor market; have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee; and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

GROUP II.   All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by an Inside Joint Apprenticeship and Training Committee.

6

GROUP III.   All applicants for employment who have two or more years' experience in the trade; are residents of the geographical area constituting the normal construction labor market; and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

GROUP IV.   All applicants for employment who have worked at the trade for more than one year.

Section 3.06   If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within forty-eight (48) hours from the time of receiving the Employer's request, Saturdays, Sundays, and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure, but such applicants, if hired, shall have the status of "temporary employees".

Section 3.07   The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees," and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

Section 3.08   "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto, which includes the area from which the normal labor supply is secured:

State of Pennsylvania - Chester County

That portion south of U. S. Highway 30 and north of the Maryland State Line and north of the Delaware State Line.

State of Pennsylvania - Delaware County

That portion south of U. S. Highway 30 and north of the Delaware State Line; and west of a line extending from Montgomery County along State Route 320 to Marple; then along Springfield Road to Saxer Avenue; along Saxer Avenue to Powell Road; along Powell Road to State Highway 420; along 420 and continuing in a straight line to the Delaware River in  the State of Pennsylvania.

State of Delaware

That portion that is the Sun Oil Refinery that extends beyond the Pennsylvania State Line into the State of Delaware.

The above geographical area is agreed upon by the parties to include the areas defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis Bacon Act to which this Agreement applies.

7

Section 3.09   Resident - means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in the area, has temporarily left with the intention of returning to this area as his permanent home.

Section 3.10   An "examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the I.B.E.W. Reasonable intervals of time for examinations are specified as ninety (90) days.   An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11   The Union shall maintain an "Out of Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12   An applicant who has registered on the "Out of Work List" must renew his application every thirty (30) calendar days or his name will be removed from the "List."

Section 3.13 An applicant who is hired and who receives, through no fault of his own, work of forty hours or less, shall upon re-registration, be restored to his appropriate place within his Group.

Section 3.14 (a)Employers shall advise the Business Manager of the Local Union of the number of applicants needed.   The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I, in the order of their place on the "Out of Work List" and then referring applicants in the same manner successively from the "Out of Work List" in GROUP II, then GROUP III, and then GROUP IV. Any applicant who is rejected by the employer shall be returned to his appropriate place within his GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within the GROUP.

    (b) An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral.   The neutral member of the Appeals Committee

shall, within three business days, review the qualifications of the applicant and the reasons for the discharges.   The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks or longer depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

8

Section 3.15   The only exceptions which shall be allowed in this order of referral are as follows:

(a)   When the Employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b)   The age ratio clause in the Agreement calls for employment of an additional employee or employees on the basis of age; therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority GROUPS, if any, shall first be exhausted before such over-age reference can be made.

Section 3.16   An Appeals Committee is hereby established composed of one (1) member appointed by the Union, one (1) member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.17   It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 3.04 through 3.15 of this Agreement.   The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union.   The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions of this Agreement and its decision shall be in accord with this Agreement.

Section 3.18   A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during the normal business hours.

Section 3.19   A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.20   Apprentices shall be hired and transferred in accordance with the Apprenticeship provisions of the Agreement between the parties.

Section 3.21   An employer shall have the right to recall for employment any former employee that the employer has laid off, provided that:

(a)   The former employee is in the highest level Group on the referral list containing applicants available for work, regardless of the individual's position on the list.

(b)   The recall is made within (26) weeks from the time of the layoff; unless the eligibility period for receiving unemployment benefits in the state is modified.

(c)   The former employee has not quit his most recent employer under this agreement within the two weeks prior to the recall request; and the former employee is not an apprentice.


ARTICLE IV
Hours - Wage Payment - Apprentices - Working Conditions

Section 4.01  Eight (8) hours between the hours of 6:00 a.m. and 5:00 p.m., with a thirty (30) minute lunch between 12:00 noon and 12:30 p.m., shall constitute a regular work day.

(a)   Five (5) days shall be the regular work week Monday to Friday inclusive.

(b)   Four Ten-Hour days, Monday to Thursday inclusive, may be worked with Friday as a make-up day for lost time due to inclement weather or emergencies only.  Fridays will have at least eight (8) hours of work available.

Section 4.02 - All over-time work performed, Monday through Saturday inclusive, shall be paid for at one and one-half (1 ½) times the regular straight time rate of pay.

(a)   All work performed on Sundays, and the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day, shall be paid for at double the regular straight time rate of pay.

Section 4.03  No work shall be performed on Labor Day, except in case of emergency and then only after permission is granted by the Business Manager of the Union.

(a)In any twenty-four (24) hour period, a consecutive seven (7) hour rest period shall be provided, otherwise overtime rates shall apply to all time worked after overtime starts.  When overtime starts, the highest (overtime) hourly rate attained shall not be reduced until the employee has had a seven (7) hour break.  However, if it is necessary because of a job condition to start work two (2) hours before job starting time (Monday through Friday inclusive), the time worked between those hours and the job starting time shall be paid for at the overtime rates, and eight (8) hours following shall revert to straight time rates.

**Section 4.04** – Effective as of 12:01 a.m. **June 2, 2014** to Midnight **May 28, 2017,** inclusive, the following minimum wages per hour shall apply:

Industrial work shall be defined to mean "having the nature of, or, characterized by Industries, of, connected with, or resulting from Industries.  Industrial work shall be defined as work on, or within any facility which manufactures, produces, or processes a product.

Commercial work is defined as any work that is not Industrial.

(The TWP Rates below do not include NLMCC, NEIF or the Administrative Fund)

The Total Wage Package for Commercial/Industrial Journey Wireman shall be:

**$65.03 Effective 12:01 A.M. June 2, 2014 through May 31, 2015**
**$67.03 Effective 12:01 A.M. June 1, 2015 through May 29, 2016**
**$69.28 Effective 12:01 A.M. May 30, 2016 through May 27, 2017**

Small Job Foreman – Not less than: $1.75 per hour above the Journeyman's rate.

Foreman – Not less than: $2.25 per hour above the Journeyman's rate.

Large Job Foreman – Not less than: $2.75; per hour above the Journeyman's rate.

General Foreman – Not less than: $3.25, per hour above the Journeyman's rate.

General Foreman – Not less than: $4.25 per hour above the Journeyman's rate.

Sub-Foreman & Pusher – Not less than $1.75, per hour above the Journeyman's rate.

ARTICLE IV

**Section 4.04.**

Effective 12:01 A.M. **June 2, 2014,** inclusive, the following Commercial and Industrial minimum wages per hour shall apply:

**Journeyman**..............................................................**$40.00**
Apprentices – Indentured prior to June 1, 2014:
     1st period 30%..........................................$12.00
     2nd period 30%..........................................$12.00
     3rd period 45%..........................................$18.00
     4th period 52%..........................................$20.80
     5th period 58%..........................................$23.20
     6th period 75%..........................................$30.00

11

```
Apprentices - Indentured after June 1, 2014:
        1st period 30%.........................$12.00
        2nd period 30%.........................$12.00
        3rd period 42%.........................$16.80
        4th period 49%.........................$19.60
        5th period 55%.........................$22.00
        6th period 70%.........................$28.00
```

Effective 12:01 A.M. **June 2, 2014**, to Midnight, **May 31, 2015**, inclusive, the following **Maintenance** Commercial/Industrial minimum wages (which is 90% of C/I rate) per hour shall apply:

```
    Journeyman.................................$36.00
    Apprentices
        1st period 30%.........................$10.80
        2nd period 30%.........................$10.80
        3rd period 45%.........................$16.20
        4th period 52%.........................$18.72
        5th period 58%.........................$20.88
        6th period 75%.........................$27.00
```

Effective 12:01 A.M. **June 1, 2015**, to Midnight, **May 29, 2016**, inclusive, the following Commercial and Industrial minimum wages per hour shall apply:

```
    Journeyman.................................$41.27
    Apprentices
        1st period 30%.........................$12.38
        2nd period 30%.........................$12.38
        3rd period 45%.........................$18.57
        4th period 52%.........................$21.46
        5th period 58%.........................$23.94
        6th period 75%.........................$30.95
```

```
    Apprentices
        1st period 30%.........................$12.38
        2nd period 30%.........................$12.38
        3rd period 42%.........................$17.33
        4th period 49%.........................$20.22
        5th period 55%.........................$22.70
        6th period 70%.........................$28.89
```

Effective 12:01 A.M. **June 1, 2015**, to Midnight, **May 29, 2016**, inclusive, the following **Maintenance** Commercial/Industrial minimum wages (which is 90% of C/I rate) per hour shall apply:

```
    Journeyman.................................$37.14
    Apprentices
        1st period 30%.........................$11.14
        2nd period 30%.........................$11.14
        3rd period 45%.........................$16.72
        4th period 52%.........................$19.31
        5th period 58%.........................$21.54
        6th period 75%.........................$27.86
```

Effective 12:01 A.M. **May 30, 2016,** to Midnight, **May 28, 2017,** inclusive, the following Commercial and Industrial minimum wages per hour shall apply:

```
Journeyman...........................................................................$42.67
Apprentices
    1st period 30%.................................................$12.80
    2nd period 30%................................................$12.80
    3rd period 45%................................................$19.20
    4th period 52%................................................$22.19
    5th period 58%................................................$24.75
    6th period 75%................................................$32.00


Apprentices - Indentured after 6/1/2014.
    1st period 30%.................................................$12.80
    2nd period 30%................................................$12.80
    3rd period 42%................................................$17.92
    4th period 49%................................................$20.91
    5th period 55%................................................$23.47
    6th period 70%................................................$29.87
```

Effective 12:01 A.M. **May 30, 2016,** to Midnight, **May 28, 2017,** inclusive, the following **Maintenance** Commercial/Industrial minimum wages (which is 90% of C/I rate) per hour shall apply:

```
Journeyman...........................................................................$38.40
Apprentices
    1st period 30%.................................................$11.52
    2nd period 30%................................................$11.52
    3rd period 45%................................................$17.28
    4th period 52%................................................$19.97
    5th period 58%................................................$22.27
    6th period 75%................................................$28.80
```

Section 4.04    - FOREMAN'S CLAUSE

On each job where two (2) to five Journeymen are required, one of them shall be a Small Job Foreman and shall receive a minimum per hour over the Journeyman's rate of:  one dollar and seventy five cents ($1.75).

On each job where six (6)to eleven (11) Journeymen are required, one of them shall be a Foreman and shall receive a minimum per hour over the Journeyman's rate of: two dollars and twenty five cents ($2.25).

On each job where twelve (12) to twenty-four (24) Journeymen are required, one of them shall be designated as Large Job Foreman and shall receive a minimum per hour over the Journeyman's rate of: two dollars and seventy five ($2.75)

On each job where twenty-five (25) to fifty-four (54) Journeymen are required, one of them shall be designated as a General Foreman and shall receive a minimum per hour over the Journeyman's rate of: three dollars and twenty five ($3.25)

13

On each job where fifty-five (55) or more Journeymen are required, one of them shall be designated as a General Foreman and shall receive a minimum per hour over the Journeyman's rate of:  four dollars ($4.25)

On each job where twelve (12) or more Journeymen are required, one of them shall be designated as a Large Job Foreman, and one of them shall be designated as a Pusher or Sub-Foreman, and receive a minimum per hour over the Journeyman's rate of: one dollar and seventy-five $1.75)

For each additional eleven (11) Journeymen above the first twelve employed on a job, an additional Pusher or Sub-Foreman shall be designated.

The General Foreman, when he reports to the job and conditions prevent him from working, shall be paid for an eight (8) hour day.  He shall also be paid his normal day's pay for all Holidays, as specified in the Agreement.

Section 4.05  Wages shall be paid weekly, not later than quitting time on Friday, and not more than three (3) days' wages will be held at anytime.  Any employee laid off, or discharged, shall be paid within 24 hours of lay-off or termination to the Local Union Hall.

(a)  Wages shall be paid weekly on the regular pay day of each Employer in U. S. Currency or by check.

(b)  The Employer agrees to deduct - upon receipt of a voluntary written authorization - the additional working dues from the pay of each I.B.E.W. Member.  The amount to be deducted shall be the amount in the approved Local Union By-Laws.  Such amount shall be certified to the Employer by the Local Union upon request by the Employer.  The Employer shall remit same to the Financial Secretary of the Union within twenty (20) days after the first (1st) of each month.

(c)  The Employer agrees to deduct - upon receipt of a voluntary written authorization - the sum of ten cents ($.10) per hour for each hour worked from the pay of each I.B.E.W. Member.  The amount shall be forwarded monthly to the International Brotherhood of Electrical Workers.  AFL-CIO Committee on Political Education, **900 Seventh Street, NW, Washington, D. C.  20001.**

Section 4.06   Any man reporting for work and being laid off, not having been notified the day previous of such layoff, shall receive not less than two (2) hours wages in order to gather his tools and personal belongings. Any employee laid off, or discharged, shall be paid within 24 hours of lay-off or termination to the Local Union Hall.

Section 4.07   No initial period of employment shall consist of less than four (4) consecutive hours.  When workmen report to a job and conditions prevent them from working, the Employer shall pay the workmen at least two (2) hours pay for reporting, unless notified one (1) hour prior to starting time.

14

Section 4.08  When so elected by the contractor, multiple shifts of at least five (5) days duration may be worked.  When two (2) or three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 a.m. and 4:30 p.m.  Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

(a)  The second shift (swing shift) shall consist of eight (8)consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M.  Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus 10% for all hours worked.

(b)  The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 12:30 A.M. and 9:00 A.M.  Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus 15% for all hours worked.

(c  The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

(d)  If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work week with the customer's work schedule.  However, any such adjustment shall last for at least five (5) consecutive days' duration unless mutually changed by the parties to this agreement.

(e)  An unpaid lunch period of thirty (30) minutes shall be allowed on each shift.

(f)  All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

(g)  There shall be no pyramiding of overtime rates and double the straight rate shall be the maximum compensation for any hour worked.

(h)  There shall be no requirement for a day shift when either the second or third shift is worked.

Section 4.09  When the Employer has no permanent shop located in the jurisdiction of the Union, then under such circumstances the job site shall be considered the city in which the shop is located.

Section 4.10   On all jobs employing five (5) or more Journeymen, if available, every fifth (5th) Journeymen shall be fifty (50) years of age or older.

Section 4.11   During periods where less than 50% of Journeymen normally employed are employed, the Labor-Management Committee shall have the right to limit the maximum number of hours a month per man, in order to increase the number of men employed.

Section 4.12   Journeymen and Apprentices shall provide themselves with a standard conventional kit of tools necessary to perform their classification of work.

Section 4.13   Workmen shall be held responsible for the Employer's tools and equipment, providing the employer furnishes a tool box with proper lock or other safe place for the storing of such tools or equipment and allows reasonable time for such care.

(a) The Employer shall provide a safe place for workmen's tools and clothing; in the event of loss by fire, he shall be held responsible for replacement thereto.

Section 4.14   Workmen shall install all electrical work in a safe and workmanlike manner and in accordance with applicable code and contract specifications.

(a)   All electrical work including temporary light and power shall be done by men employed under the terms of this agreement.

(b)   On jobs whenever temporary lighting, power and/or equipment is required for productive construction in other than regular working hours by workmen other than electricians, at least one (1) Journeyman electrician shall be employed on the site.   This journeyman shall do productive work when not engaged in temporary work.

(c)   On renovation, repair, or maintenance temporary light, power, and equipment shall be installed and maintained by electrical workers covered under this agreement.   No work shall be performed outside of the regular working hours to maintain or repair this temporary light, power, or equipment unless it is specifically at the employer's request.

(d)   Under all project circumstances, temporary electric shall be left energized and in working condition past the normal working hours for lighting, heating/air conditioning, job trailers and shanties, receptacles used for equipment charging, ingress/egress and security without the requirement for a journeyman electrician to be employed past the normal working hours.

Section 4.15   A Journeyman shall be required to make corrections on improper workmanship for which he is responsible on his own time and during regular working hours, unless errors were made on orders of the employer or the employer's representative.   Employers shall notify the

16

Union of workmen who fail to adjust improper workmanship and the Union assumes responsibility for the enforcement of this provision.

Section 4.16   The representative of the Union shall be allowed access to any shop or job at any reasonable time workmen are employed under the terms of this agreement.

Section 4.17   The Employer shall pay for traveling time and furnish transportation from shop to job, job to job, and job to shop, within the jurisdiction of the Union, except when an Employee uses his own transportation, he shall be compensated by his Employer, at no less than twenty-two cents ($.22) per mile, from shop to job, job to job, and job to shop, within the jurisdiction of the Union.   On work outside the jurisdiction of the Union, the Employer shall furnish transportation, board and all other necessary expenses.

Section 4.18   No traveling time shall be paid before or after working hours to workmen for traveling to and from any job in the jurisdiction of the Union when workmen are ordered to report on the job.

Section 4.19   On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two or more journeymen must work together.

Section 4.20   The policy of the Members of the Local Union is to promote the use of materials and equipment manufactured, processed or repaired under economically sound wage, hour and working conditions by qualified electrical workers.

Section 4.21   On jobs having a Foreman, workmen are not to take directions or orders, or accept the layout of any job from anyone except the Foreman.

On jobs having a General Foreman, all directions or orders shall be processed through the General Foreman.

Section 4.22   No workman shall act as a Foreman on more than one job at a time.

Section 4.23 No Foreman shall supervise more than ten (10) Journeyman.

Section 4.24   When the position of General Foreman and/or Foreman has been created on a job, such position shall be filled and maintained until the conclusion of the job and be paid for until such conclusion at the highest wage rate attained for the position during the job.

Section 4.25   All conduits shall be cut and threaded on the job.

Section 4.26   All pulling of wire or cable shall be done by hand by manually operated winch or by such power drive as is within the jurisdiction right of the I.B.E.W.

Section 4.27   Any provision of this Agreement adjudged to be unlawful by any court of competent jurisdiction shall be treated for all purposes as null and void but all other provisions of this Agreement shall continue to be in full force and effect except as provided herein, and the parties thereupon seek to negotiate substitute provisions which are in conformity with applicable laws.

**Section 4.28**   All Contractors who do not have a current consecutive twelve month record of timely payment of wages and fringe benefits to the Local Union No. 654, I.B.E.W. Trust Funds, will be required to post a bond in the amount of: 25,000 dollars for employers with 1 - 10 employees; 50,000 dollars for employers with 11 - 25 employees; $100,000 for employers with 26 - 50 employees; $200,000 for employers with 51 - 100 employees; and $250,000 for employers in excess of 101 employees.

An increase in Local 654 employees as determined by Local 654 from one level to another (ex: 25 employees to 26) shall immediately require the higher stated bond limit.  The higher limit shall continue for two months after the number of employees has dropped to a lower level (ex: 51 to 50) and shall remain at that level until a new level is reached.   In no case shall the bond be less than $25,000.00. Contractors who do not comply with this requirement will not be permitted to work under this agreement.

Any Contractor who becomes delinquent will have current manpower removed until the bond is secured. A copy of this graduated Bonding Schedule and an Employer Bonding List of employers who are currently bonded shall be posted at the union office and a copy should be sent to the local NECA Chapter office on a monthly basis.

If the Employer working under this Agreement either as a Prime Contractor, a Sub-Contractor, or as a Subcontractor at any level ceases work on that project because of failure on the part of the Owner, Owner's Agent, Construction Manager, Prime Contractor, or Subcontractor to pay monies dues for properly submitted progress payments an/or payments for completed work and/or payments for approved changes and/or work performed under a notice to proceed order when such payments are due, then upon request of the affected Contractor and upon application to the Labor Management Committee, the Labor Management Committee may determine that the Union is not in violation of this Agreement, and will not furnish Workmen to the Owner, Owner's Agent, Prime Contractor, Subcontractor or any other Contractor, via referral, transfer of workmen by the union or contractor for the purpose of completing that work at issue when not being paid; and the purpose of this provision is to protect the ability of the Employer to properly pay the base wages and benefits due for labor expended on that project.

The provisions of this section will be implemented by a majority vote of the Labor/Management Committee whose decision is final and binding.                                                      11/2013

18

Section 4.29   MAINTENANCE, repair, and renovations of existing facilities after all initial installation of equipment has been made, hereafter referred to as maintenance work, is defined as follows:

(a)   Maintenance shall be defined to mean any work that must be performed to keep the present equipment in running condition within the permanent limits of the plant operation.

(b)   Repair shall be defined to mean work performed to restore operation of equipment or present structure by the replacement of bad equipment with new equipment for continued plant operation.

(c)   Renovations shall be defined to mean work performed to improve and re-locate present equipment for more efficient operation of the plant.

(d)   Existing facilities shall be defined to mean any building which has already been completed and accepted by the owner of said building to start production of his product, and shall not apply to any new construction which may be done in the future even though it may be on the same property or attached to present facilities.

Maintenance work as defined above will be performed under the terms of this Agreement, except as follows:

(1)   All maintenance work performed outside the regular scheduled working hours and on Saturdays shall be paid for at one and one-half (1 ½) the regular straight time rate of pay.   All work performed on Sundays and the following holidays:   New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day, or days celebrated as such, shall be paid for at double the regular straight time rate of pay.

Section 4.30   On every job where more than one member is employed, a member of the Union shall be designated by the Business Manager's Office of the Union to act in the capacity of job Steward.

(a)   At no time shall a job or shop Steward be discriminated against for the faithful performance of his duty.

(b)   Stewards shall in no case cause a stoppage of work.

(c)   In the event of a dispute or trouble arising on any job, workmen on the job shall remain at work. The job Steward on the job, under such circumstances, shall first report the difficulty to the Foreman having charge or the Contractor, and should this procedure fail or delay the adjudication he shall then report the complaint immediately to the Business Manager.

19

    (d)   The Steward shall be assigned normal duties and shall not leave said assignment without permission or supervision.

    (e)   In the event the Business Manager and the Employer fail to settle any such disputes, the matter shall be referred to adjudication to the Labor-Management Committee as herein provided.

## ARTICLE V
### Apprenticeship and Training

Section 5.01   There shall be a Joint Apprenticeship and Training Committee (JATC) consisting of a total of six or eight members who shall also serve as Trustees to the local apprenticeship and training trust.  An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

    The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study.  All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

    The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (unindentured, intermediate journeymen, etc.).

Section 5.02   All JATC member appointments, reappointments and acceptance of appointments shall be in writing.  Each member shall be appointed for a (3 or 4) year term, unless being appointed for a lesser period of time to complete an unexpired term.  The terms shall be staggered, with one (1) term from each side expiring each year.  JATC members shall complete their appointed term unless removed for cause by the party they represent or they voluntarily resign.  All vacancies shall be filled immediately.

    The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges.  The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for Trust meetings.

    The JATC should meet on a monthly basis, and also upon the call of the chairman.

Section 5.03 Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation and resolve; as per standards and policies.  If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee

for resolution as outlined in Article I of this agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 5.04   There shall be only one (1) JATC and one (1) local apprenticeship and training trust.   The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunication apprenticeship.   The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent.   A subcommittee member may or may not be a member of the JATC.

Section 5.05 The JATC may select and employ a part-time or a full-time training director and other support staff, as it deems necessary.   In considering the qualifications, duties and responsibilities of the training director, the JATC should review the Training Director's Job Description provided by the NJATC.   All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 5.06 To help ensure diversity of training, provide reasonable continuous employment opportunities and comply with apprenticeship rules and regulations the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another.   The employer shall cooperate in providing apprentices with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments.   If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 5.07   All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards.   Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship.   Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

21

Section 5.08   The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs.   The JATC is authorized to indenture the number of apprentices necessary to meet the job site ratio as per Section 5.12.

Section 5.09   Though the JATC cannot guarantee any number of apprentices; if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request.   If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants.   An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

Section 5.10 To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualifications for apprenticeship.   Unindentured workers shall not remain employed if apprentices become available for OJT assignment.   Unindentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the unindentured person must sign a letter of understanding with the JATC and the employer --- agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an unindentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

Section 5.11   The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured.   Contributions to other benefit plans may be addressed in other sections of this agreement.

Section 5.12   Each job site shall be allowed a ratio of two (2) apprentices for every three (3) Journeyman Wiremen.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| Etc. | Etc. |

22

The first person assigned to any job site shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

Section 5.13   An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in sight of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 5.14   Upon satisfactory completion of apprenticeship, the JATC shall issue all graduation apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 5.15   The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA and other applicable regulations.

The trustees authorized under this trust agreement are hereby empowered to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be handled and disbursed in accordance with the trust agreement.

Section 5.16   All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the local apprenticeship and training trust agreement. The current rate of contribution is: one and one-half percent (1.5%), of the gross monthly payroll. This sum shall be due the Trust Fund by

23

the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

Section 5.17.  There shall be twenty (20) Apprentices indentured every year except when ten (10) or more Apprentices are unemployed for a period of two (2) months prior to selection.

## ARTICLE VI
### Fringe Benefits

#### Health and Welfare and Pension Plans

The Employers of the Chester Division, Penn-Del Jersey Chapter, N.E.C.A., agree to participate jointly with Local Union #654, I.B.E.W., in operations of the Health and Welfare and Pension Funds.

#### HEALTH AND WELFARE FUND

The Employer agrees to and shall comply with all the applicable provisions of the Trust Agreement establishing the International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 654 Health and Welfare Fund, entered into November 5, 1962.

The Trust Agreement provides for the payment of contributions monthly into the Trust Fund, which shall be known as the International Brotherhood of Electrical Workers, Local Union No. 654, Health & Welfare Fund.  This sum shall be due the Trust Fund twenty (20) days following the end of each calendar month.

**For all Employees who perform Commercial and Industrial work covered by this Agreement, an amount per hour worked equal to:**

**Effective June 2, 2014 - $10.62**
**Effective June 1, 2015 - $10.62**
**Effective May 31, 2016 - $10.62**

Individual Employers who fail to remit regularly shall be subject to having this Agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the Employer fails to show satisfactory proof that delinquent payments have been paid into the Health and Welfare Fund.

#### PENSION TRUST FUND

The Employer agrees to and shall comply with all the applicable provisions of the Trust Agreement, establishing the International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 654, Pension Fund, entered into August 26, 1963.

24

The Pension Agreement provides for all employees who perform work covered under this Agreement, the payment of contributions into the Pension Fund, which shall be known as the International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 654, Pension Fund, shall be as follows: This sum shall be due the Trust Fund twenty (20) days following the end of each calendar month.

DEFINED BENEFIT:

Effective **June 2, 2014**, for all Employees who perform Commercial and Industrial work covered by this Agreement, an amount per hour worked equal to: Journey Wireman **$7.07**; Apprentices periods 3 through 6: **$2.63** per hour worked.

Effective **June 1, 2015**, for all Employees who perform Commercial and Industrial work covered by this Agreement, an amount per hour worked equal to: Journey Wireman **$7.57**; Apprentices periods 3 through 6: **$3.13** per hour worked.

Effective **May 31, 2016**, for all Employees who perform Commercial and Industrial work covered by this Agreement, an amount per hour worked equal to: Journey Wireman **$8.17**; Apprentices periods 3 through 6: **$3.73** per hour worked.

DEFINED CONTRIBUTION:

Effective July 30, 2012, for all Journeyman who perform Commercial or Industrial work covered by this Agreement, an amount equal to 13.71% of the Gross Labor Payroll.

N.E.B.F. PENSION

It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3%) of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF

or its assignee.  The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

An individual Employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this agreement.

ARTICLE VII
National Electrical Industry Fund

Section 7.01  Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll as determined by each local Chapter and approved by the Trustees, with the following exclusions:

1.  Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any Chapter area during any calendar year but not exceeding 150,000 man-hours.

2.  One hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages (including overtime) paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

Article VIII
Local Labor-Management Cooperation Committee (LLMCC)

Section 8.01 - The parties agree to participate in a Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C. 175(a) and Section

302(c)(9) of the Labor Management Relations Act, 29 U.S.C. 186(c)(9). The purposes of this Fund include the following:

    1) to improve communications between representatives of Labor and Management;
    2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
    3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
    4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
    5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;
    6) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
    7) to engage in public education and other programs to expand the economic development of the electrical construction industry;
    8) to enhance the involvement of workers in making decisions that affect their working lives; and,
    9) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 8.02 The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust and an amendments thereto and any other of its governing documents.   Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the LMCC, as provided in said Agreement and Declaration of Trust.

Section 8.03. Effective May 29, 2006, each employer shall contribute five cents ($.05) per hour worked.   Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than twenty (20) days following the last day of the month in which the labor was performed.   The Penn-Del-Jersey Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 8.04. If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance.   In the event the Employer is in

27

default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.  The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

ARTICLE IX
National Labor Management Cooperation Committee

Section 9.01    The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29U.S.C.175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. 186(c)(9).  The purpose of this Fund include the following:

(1) to improve communication between representatives of labor and management;

(2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organization effectiveness;

(3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

(6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

(7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(8) to engage in public education and other programs to expand the economic development of the electrical construction industry;

28

(9) to enhance the involvement of workers in making decisions that affect their working lives; and

(10) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 9.02     The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents.  Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 9.03     Each Employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year.    Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Penn-Del-Jersey Chapter, NECA, Chester Division, or its designee, shall be the collection agent for this Fund.

Section 9.04     If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance.  In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.  The Employer shall also be liable for all costs of collecting the payment together with attorney's fees.

ARTICLE X
Safety

Section 10.01.    A Safety Committee consisting of Contractors' representatives and members of Local Union 654 shall be appointed.

Section 10.02.    Each contractor must provide in writing all safety policies on each job and provide proper Arch-flash protection equipment.

29

Article XI
Substance Abuse

<u>Section 11.01</u>.   The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant.   The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component.   The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations.   Such policies and programs must also be administered in accordance with accepted scientific principles, and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality.   To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy.   The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

(Policy can be obtained either from LU#654 or Penn-Del-Jersey Chapter, NECA)


ARTICLE XII
Enabling Language

Section 12.1 - The parties agree that on each annual anniversary date of the effective date of this agreement the Union may relocate the total package being paid by employer between wages and benefits, and, as between benefits; provided, however, that no relocation of the total wage package to the benefits shall result in the Defined Benefit Plan or the Defined Contribution Plan being in violation of section 415 of the Internal Revenue Code; and provided further that no relocation shall result in any employer being required to pay more than the agreed upon total wage package in effect at the time the relocation is made, taxes and insurance based upon the total package or the base rate of pay excepted.

30

ARTICLE XIII
Administrative Fund

Section 13.01.    Each Employer covered by this Agreement will contribute to the Administrative Fund ½ of 1% of their gross labor payroll effective 6/1/1999 for all work covered by this Agreement. The Fund will be administered solely by the Association and will be utilized to pay to Management's costs of the labor contract administration including negotiations, disputes and grievance representation and for other administrative functions and expenses required of management, including service on fringe benefit funds.

Further, from time to time it will be utilized for promotion of the electrical contracting industry and the enhancement of labor relations in Eastern Pennsylvania.

No part of the funds collected under this trust will be used for any purpose which is held to be in conflict with the interests of the International Brotherhood of Electrical Workers and its Local Unions.

Payment will be forwarded monthly to the designated depository in a form and manner prescribed by the trustees, no later than fifteen (15) calendar days following the last day of the month in which labor was performed.  Failure to do so will be considered a breach of this Agreement by the individual Employer.

Enforcement for delinquent payments to the Fund will be the sole responsibility of the Fund or the employers and not the Local Union.

ARTICLE XIV
Credit Union Deduction

Section 14.1.  The parties hereto agree to deduct an amount equal to six percent (6%) of said Employee's gross wages, and forward check in this amount made payable to TD Bank with one copy of summary report, and a copy of the monthly payroll report and mail to TD Bank, Attn: Stingel 02-206-02-23, 6000 Atrium Way, Mount Laurel, NJ 08054. All monies to be due on the twentieth (20) day of the following month from which deductions have been made.  Authorization card must be signed for Credit Union deductions.

ARTICLE XV
IBEW /NECA Code of Excellence

Section 15.1.  The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations.   Therefore each IBEW local union and NECA chapter shall implement a Code of Excellence Program.   The program shall include minimum standards as designed by the IBEW and NECA. (Program Document can be obtained either from LU#654 or Penn-Del-Jersey Chapter, NECA)

31

Separability Clause

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

IN WITNESS THEREOF, the parties have executed this **Amendment** this **21st day of November 2013**.

32